A05A0054. DONNALLEY et al. v. STERLING et al.
(618 SE2d 639)

ADAMS, Judge.

Joseph and Carole Sterling, individually and as administrators of the estate of their deceased son, Daniel Sterling, filed this wrongful death suit against Mike Donnalley and the Cobb County School District.[1] The trial court subsequently granted summary judgment on the Sterlings' tort claims, finding that Donnalley and the District were shielded from liability on the grounds of sovereign and official immunity. But the trial court denied the motion as to the Sterlings' breach of contract claim, and Donnalley and the District appeal that holding. Because we find as a matter of law that Daniel Sterling was not intended as a third-party beneficiary under the contract at issue, we reverse.

Summary judgment is proper where the movant demonstrates that "there is no genuine issue of material fact and that the undisputed facts, viewed in a light most favorable to the nonmovant, warrant judgment as a matter of law." (Footnote omitted.) *SunTrust*

---

[1] The Sterlings also filed suit against assistant football coach, Steve Brown; Athens "Y" Camp, and Young Men's Christian Association of Athens, Georgia; as well as unnamed corporate and individual defendants, but they are not parties to this appeal.

*Bank v. Merritt,* 272 Ga. App. 485, 486 (612 SE2d 818) (2005). This Court reviews the trial court's ruling on the motion for summary judgment de novo. Id.

Here, the evidence shows that in 1999, Donnalley was the head football coach at Wheeler High School in Cobb County. In August 1999, the Wheeler High School football team traveled to the Athens YMCA Camp in Tallulah Falls, Georgia, for a three-day training camp. On the first day of camp, Daniel Sterling, along with several teammates, was riding a "zip line" into the camp's lake. The boys would drop off into the lake from the zip line and swim either to the dock or to the shore. The campers were supervised by Steve Brown, an assistant football coach, who was standing on a dock approximately 30 feet away. Brown had been entrusted with responsibility for patrolling the lake for the three years Wheeler High had held the football camp at the Athens "Y" Camp. In the past, Brown had undergone CPR, lifesaving and water rescue instruction and had been certified to teach first aid, but he had never received a certificate in lifesaving or water rescue.

After his second trip down the zip line, Daniel Sterling surfaced, swam clear, and began treading water. A few minutes later, however, Daniel began to struggle in the water. One of his teammates, Breon Segree, tried to help him but was unable to hold him above the water. Segree yelled for help and another teammate, Chase Paris, tried to help Segree pull Daniel from underneath the water. Brown also dove into the water and helped Paris bring Daniel to shore. He was quickly joined in the water by Donnalley and a third coach.

Daniel was unconscious and was not breathing when he was brought to shore. The coaches administered CPR until an ambulance arrived, and Daniel was eventually evacuated by helicopter from a local hospital to Scottish Rite Children's Hospital in Atlanta, where, tragically, he died two days later.

1. The Sterlings' breach of contract claim arises from a one-page rental contract that Donnalley signed with the YMCA for the use of the Athens "Y" Camp. Donnalley signed the agreement as a "group official" and is listed as the "person responsible." Under this contract, Donnalley agreed that the football team, and not the YMCA, was responsible for providing "qualified personnel" to supervise the lake during water activities, although that term was not defined in the agreement. The Sterlings' contract claim asserts that Daniel was a third-party beneficiary of the rental contract, and they argue that a jury question exists as to whether Donnalley and the District breached the requirement of providing "qualified personnel" by failing to have a certified lifeguard patrol at the lake.

In denying summary judgment on this claim the trial court stated that it could not "find as a matter of law that Daniel Sterling

was not a third-party beneficiary of the contract." The trial judge stated that the language of the contract — in particular, the use of the pronoun "we" when referring to the party renting the camp — made it appear as if Donnalley entered into the contract on behalf of the entire Wheeler Football Team. From this language, the judge inferred an intent to confer a direct benefit upon the members of the football team, including Daniel Sterling. We disagree.

"In order for a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it was *intended* for his or her benefit. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient." (Citation and punctuation omitted; emphasis in original.) *Culberson v. Fulton-DeKalb Hosp. Auth.*, 201 Ga. App. 347, 349 (1) (d) (411 SE2d 75) (1991). Accordingly, "[a]lthough the third-party beneficiary [does not need to] be specifically named in the contract, the contracting parties' intention to benefit the third party must be shown on the face of the contract." (Citation omitted.) *Brown v. All-Tech Investment Group*, 265 Ga. App. 889, 897 (2) (a) (i) (595 SE2d 517) (2004). See also *Satilla Community Svc. Bd. v. Satilla Health Svcs.*, 275 Ga. 805, 810 (2) (573 SE2d 31) (2002). Thus, "in personal injury cases, an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him from physical injury." (Citation and punctuation omitted.) *Armor Elevator Co. v. Hinton*, 213 Ga. App. 27, 30 (2) (443 SE2d 670) (1994).

Applying these principles, we recently held that an inmate injured on a work detail was not a third-party beneficiary to a contract between Stone Mountain Memorial Association and the Department of Corrections. *Gay v. Ga. Dept. of Corrections*, 270 Ga. App. 17, 22-24 (2) (606 SE2d 53) (2004). Although that contract required the Association to provide a safe workplace for inmate work details and to furnish safety gear, we held that these provisions did not evidence an intent to benefit the inmates directly as the Association did not agree to render any specifically identified performance to the inmates. Instead, we found that any benefit to the inmates was merely incidental to the contract. Id. See also *Anderson v. Atlanta Committee for the Olympic Games*, 273 Ga. 113, 118 (4) (537 SE2d 345) (2000) (park visitors not third-party beneficiaries of security contract between security company and Olympic committee); *Brown v. All-Tech Investment Group*, 265 Ga. App. at 897 (2) (a) (i), 900 (2) (b) (tenant's visitors not third-party beneficiaries to contracts between tenant and property manager and property manager and security service provider).

Similarly, we find that any benefit to Daniel Sterling from the rental contract was merely incidental and did not render him a third-party beneficiary to the contract. It is clear that the contract, when read as a whole, was intended to delineate the relative duties and responsibilities of the parties. The form agreement designates the time and length of the rental, the rental fee and divides responsibilities between the Athens "Y" Camp and the Wheeler Football Team. After assigning responsibilities for meals and cleaning of the facilities, the contract provides, in pertinent part:

> 4) We will be responsible for administering *First Aid along with supplying the needed medical supplies. Also we will have qualified personnel to patrol the water front areas.*
> 5) The Athens "Y" Camp *has no responsibility or liability concerning any lake activities.*

The pronoun "we" refers to the Wheeler Football Team as the group renting the camp.

We find that the intent of these sections is merely to clarify that it was the football team, and not the camp, that had the responsibility over the lake area and its associated activities and specifically to relieve Athens "Y" Camp of this responsibility. While the members of the football team may have incidentally benefitted from this agreement, we find nothing in the language indicating an intent to confer a direct benefit upon the individual players to protect them from physical harm.[2] For example, there is no agreement to render any specific performance for the benefit of the individual football players. And the use of the pronoun "we" does not alter this analysis.

Accordingly, Donnalley and the District were entitled to summary judgment on the Sterlings' breach of contract claim.

2. Given our holding in Division 1 above, we do not reach the remaining enumerations of error.

*Judgment reversed. Smith, P. J., and Ellington, J., concur.*

DECIDED JULY 13, 2005 —
RECONSIDERATIONS DENIED JULY 28, 2005 — ▬▬▬▬▬

*Brock Clay, Carlton L. Kell, John K. Wells*, for appellants.

---

[2] Compare *Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*, 273 Ga. 715, 718 (4) (545 SE2d 875) (2001) (case remanded to trial court for consideration of third-party beneficiary claim where at least two written agreements between county service board and caregiver identified plaintiff as specific individual for whom personal support and residential services would be provided).

*Hertz, Link & Smith, Eric J. Hertz, Mark D. Link, Houston D. Smith III*, for appellees.

*Carlock, Copeland, Semler & Stair, Wade K. Copeland, Margaret T. Blackwood, Richard M. Pierro, Jr.*, amici curiae.