### A10A0044. BARRETT v. GEORGIA DEPARTMENT OF TRANSPORTATION et al.

(697 SE2d 217)

MIKELL, Judge.

On December 28, 2003, 19-year-old John Edwin Barrett and two other teenaged boys went riding on a dirt road at night with 16-year-old Charles Ryan Stratton in his 1973 Ford Bronco in an area adjacent to Interstate Highway 20 in Richmond County. The Georgia Department of Transportation ("DOT") owns the road, which is located within a fenced-off portion of the right-of-way for I-20. The road forms a loop, and when Stratton reached a mud hole at the end, he backed up to try and turn around. The Bronco's rear wheels went over the edge of a 15-foot drop-off, and the vehicle flipped over into a creek bed at the bottom of a culvert. Barrett was injured, and he filed suit against, inter alia,[1] the DOT, alleging that the DOT negligently maintained the road by failing to erect guard rails or signs warning of the drop-off. According to the DOT's area engineer, Corbett Reynolds, access to the right-of-way had been restricted by a gate, but the gate had been knocked down before the accident. Separately, Barrett and Stratton went back to the accident site, and both of them deposed that they saw a gate lying in the bushes.

The DOT filed a motion to dismiss the complaint, contending that Barrett was required to attach the affidavit of a professional engineer.[2] The DOT also moved for summary judgment, arguing that Barrett was either a trespasser or a licensee, so that the DOT could only be held liable for wilful or wanton injury, of which there was no evidence. In addition, the DOT argued that it had no statutory duty to maintain the road. The trial court agreed and granted both motions in a single order. Barrett appeals. We affirm the grant of

---

[1] Stratton and his parents were also named as defendants. Barrett has settled his claims against them.

[2] See OCGA § 9-11-9.1 (a) (2), (g) (21).

summary judgment to the DOT and, therefore, find it unnecessary to address the expert affidavit issue.

The standards for summary judgment are well-settled.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.[3]

We review de novo a trial court's grant of summary judgment.[4] Construed most favorably to Barrett, the evidence shows that Stratton was driving on Warren Road when one of his passengers, Fernando Mata, suggested that they drive down a dirt trail that was accessible from the road. Stratton testified that he passed a fence post when he drove down the trail, but nothing was blocking the entrance to it. Stratton also testified that the trail makes a loop that ends at Warren Road and there is a mud hole in the middle of the loop. When Stratton reached it, he decided to turn around because he did not want the Bronco to get dirty. The trail was too narrow, however, as the fence separating it from I-20 was in the way. According to Stratton, he backed up as far as he could see between two trees. Initially, when his rear tires dropped, he thought he had rolled down a hill, so he put the Bronco in first gear and eased off the brake. The Bronco then flipped over backward into the culvert. Barrett testified that he was looking back, and it appeared as though the road continued past two trees on each side of the culvert.

Reynolds, who was responsible for maintenance of the culvert, testified that the DOT acquired the property in the 1960's during the course of constructing I-20; that the dirt road is fenced off from travel lanes and is not intended for public use but rather for access to the sewer system; that, according to the original construction plans for I-20, the area encompassed portions of a county service road that was used to construct and maintain a culvert for a creek that flows through I-20, and the county used the dirt service road to access the sewer system located adjacent to the creek; that, according

---

[3] (Citation and emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[4] See *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

YALE LAW LIBRARY

to the reconstruction plans for the I-20/I-520 Interchange in 2002, access to the right of way was restricted by a gate placed near the intersection of Warren Road and Kings Chapel Road; that both of those roads are county roads and the DOT does not maintain them; that the DOT was not aware that the gate had been knocked down, and since the accident, it has installed a new gate and additional fencing; and that the DOT inspects drainage structures, such as the culvert at issue, every other year.

1. Although Barrett assigns error to each of the trial court's rulings, we need not address them all so long as the judgment is right for any reason. "A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed."[5]

The threshold issue in a negligence action is whether, and to what extent, the defendant owes a legal duty to the plaintiff.[6] This is a question of law.[7] Under the Georgia Code of Public Transportation, the DOT is required to "plan, designate, improve, manage, control, construct, and maintain a state highway system and shall have control of and responsibility for all construction, maintenance, or any other work upon the state highway system."[8] But, with a few exceptions not applicable here, the Code expressly prohibits the DOT "from maintaining any public road not on the state highway system."[9] Thus, pretermitting whether the dirt road at issue was a "public road" within the meaning of OCGA § 32-1-3,[10] the DOT was prohibited from maintaining it unless it was part of the state highway system. In this regard, OCGA § 32-4-20 provides as follows:

> No public road shall be designated as a part of the state highway system unless it meets at least one of the following requirements: (1) Serves trips of substantial length and duration indicative of regional, state-wide, or interstate importance; (2) Connects adjoining county seats; (3) Connects urban or regional areas with outlying areas, both

---

[5] (Citation and punctuation omitted.) *Gilbert v. City of Jackson*, 287 Ga. App. 326, 327 (1) (651 SE2d 461) (2007).

[6] *City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861) (1993).

[7] Id.

[8] OCGA § 32-2-2 (a) (1).

[9] OCGA § 32-2-61 (e). See *Dept. of Transp. v. Carr*, 254 Ga. App. 781, 783 (1) (564 SE2d 14) (2002) (physical precedent only); *Dept. of Transp. v. Smith*, 210 Ga. App. 741-742 (1) (437 SE2d 811) (1993); *Jackson v. Dept. of Transp.*, 201 Ga. App. 863, 864 (412 SE2d 847) (1991).

[10] OCGA § 32-1-3 (24) defines a "public road" as "a highway, road, street, avenue, toll road, tollway, drive, detour, or other way open to the public and intended or used for its enjoyment and for the passage of vehicles in any county or municipality of Georgia."

intrastate and interstate; or (4) Serves as part of the principal collector network for the state-wide and interstate arterial public roads.

In the case at bar, the evidence shows, as a matter of law, that the dirt road did not meet any of these four requirements. Rather, it is undisputed that the road was a dead-end loop that led back to Warren Road, a county road. The dirt road was part of a right-of-way that was fenced off from the travel lanes of I-20, and, at some point before this incident, access to it had been restricted by a gate. As such, the road was not a part of the state highway system, and the DOT had no duty to maintain it pursuant to the authorities cited herein. It follows that the trial court correctly ruled that the DOT's legal duty to Barrett is no greater than that of any other landowner.

2. Barrett argues that the trial court erred in determining that the duty of care owed by the DOT to a person lawfully using a public road is the same as the duty owed to a licensee or trespasser. As demonstrated below, however, a person using public property may be considered a licensee.

> A trespasser is one who, though peacefully or by mistake, wrongfully enters upon property owned or occupied by another. An invitee, on the other hand, is someone who, by express or implied invitation, has been induced or led to come upon premises for any lawful purpose. Generally, a person may be deemed an invitee if his presence on the property is of mutual benefit to both him and the land-owner. A licensee, which falls between the two, is one who is permitted, either expressly or impliedly, to go on the prem-ises of another, but merely for his own interest, conven-ience, or gratification.[11]

*Georgia Dept. of Transp. v. Strickland*[12] is instructive on this issue. In that case, a woman parked her car on State Route 73 (also known as Main Street) in downtown Sylvania. When she exited her car, she stepped in a pothole, tripped, and fell. Because she fell in the right-of-way of a state road inside city limits, the plaintiff sued both the city and the DOT.[13] In reversing the denial of the defendants'

---

[11] (Punctuation and footnotes omitted.) *Matlack v. Cobb Elec. Membership Corp.*, 289 Ga. App. 632, 633-634 (658 SE2d 137) (2008).

[12] 279 Ga. App. 753 (632 SE2d 416) (2006).

[13] Id.

motions for summary judgment, we stated as follows:

> It is undisputed that [the plaintiff] was a licensee at the time of her fall, a point she concedes. She was neither a customer, a servant, nor a trespasser, and she stood in no contractual relationship with the City or the Department. She used the public parking for her own interest, convenience, and gratification. Consequently, her status is that of licensee.[14]

In the case at bar, Barrett deposed that he and his friends took the Bronco on the dirt road simply because they wanted to. Barrett thereby admitted that he used the road "merely for his own interest, convenience, or gratification." Therefore, his status is that of a licensee. The duty of care owed to a licensee is as follows: "Although a landowner owes a duty to use ordinary care to protect anticipated licensees from . . . hidden perils, where the alleged negligence arises from a dangerous static condition on the premises, the duty remains not to injure the licensee wilfully or wantonly."[15] In the case at bar, the allegedly dangerous condition — the drop-off to the drainage culvert — was a static condition.[16] Thus, the DOT owed Barrett a duty not to injure him wilfully or wantonly. As Barrett has not demonstrated any action by the DOT that constituted wilful and wanton conduct, the trial court properly granted summary judgment to the DOT.

3. Barrett contends that the DOT may be held liable for failing to inspect its property pursuant to OCGA § 50-21-24 (8), which provides:

> The state shall have no liability for losses resulting from: . . . [i]nspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the state to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety[.]

---

[14] (Citations omitted.) Id. at 754 (1).

[15] (Citation and punctuation omitted.) *Trulove v. Jones*, 271 Ga. App. 681, 682 (1) (610 SE2d 649) (2005). Accord *Trammell v. Baird*, 262 Ga. 124, 125-126 (413 SE2d 445) (1992) (setting forth the same rule for trespassers); *Mansfield v. Colwell Constr. Co.*, 242 Ga. App. 669, 671 (530 SE2d 793) (2000); OCGA § 51-3-2.

[16] See *Trammell*, supra (plaintiff riding motorcycle collided with covered cable gate on unpaved road; gate was a static condition, plaintiff was trespassing, and the Department of Natural Resources was not liable for his injuries); *Ga. Dept. of Transp. v. Thompson*, 270 Ga. App. 265, 271 (2) (a) (606 SE2d 323) (2004) (a trash container sitting atop a concrete storm drain was a static condition); *Aldredge v. Symbas*, 248 Ga. App. 578, 581 (547 SE2d 295) (2001) (landowner not liable to licensee who fell into drainage ditch obscured by shrubbery).

Barrett did not raise a negligent inspection theory in the trial court, however, and we will not consider it for the first time on appeal.[17]

4. Finally, Barrett challenges the trial court's dismissal of the complaint for failure to file a malpractice affidavit. This claim of error need not be addressed in view of our holdings above.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED APRIL 28, 2010 —
RECONSIDERATION DENIED JUNE 29, 2010 —

*Bell & Brigham, John C. Bell, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Claude M. Sitton, Elizabeth A. Monyak, Assistant Attorneys General*, for appellees.

---

[17] See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389 (2002) ("To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, 'He must stand or fall upon the position taken in the trial court.' Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court. If the rule were otherwise, a party opposing a motion for summary judgment need not raise any legal issue, spend the next year thinking up and researching additional issues for the appellate court to address, and require the opposing party to address those issues within the narrow time frame of appellate practice rules") (punctuation and footnotes omitted).