A11A0899. BOLLER v. ROBERT W. WOODRUFF ARTS CENTER, INC.
(716 SE2d 713)

MIKELL, Judge.

Laura Boller, as the widow of Thomas Anthony Boller and as the administrator of his estate, brought this wrongful death action against Robert W. Woodruff Arts Center, Inc. (the "Arts Center"). The trial court granted summary judgment in favor of the Arts Center, and Boller appeals. Finding no error, we affirm.

We review the grant or denial of summary judgment de novo,[1] applying the following standard:

To prevail at summary judgment under OCGA § 9-11-56,

---

[1] *McCullough v. Reyes*, 287 Ga. App. 483, 484 (651 SE2d 810) (2007).

the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. The burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[2]

Viewed in the proper light, the record reflects that on the evening of July 24, 2004, Boller and her husband went to the Chastain Park Amphitheatre to attend an outdoor concert sponsored by the Atlanta Symphony Orchestra (the "ASO"), a division of the Arts Center. The Arts Center was the organizer of the concert and had custody and control of the Amphitheatre on that evening. The ASO had contracted with an ambulance service to have a stand-by ambulance at its "events," but unfortunately, no ambulance was on duty at this particular concert. At some time between 8:00 and 8:10 p.m., Boller's husband dropped her off at the main gate of the Amphitheatre and proceeded to park his car. As he walked through the parking area on his way back to the Amphitheatre, he collapsed, suffering cardiac arrest. A parking attendant heard him fall and immediately summoned a police officer, Sergeant Patterson, who was directing traffic nearby. Patterson could get no response from him, so she called Lieutenant Mathis, an on-site officer, who told her that no on-site ambulance was available and that she should call 911, which she proceeded to do. According to Patterson's statement, she was first made aware of Mr. Boller's collapse at 8:20 p.m.; she called 911 at around 8:35 p.m.; and a Fulton County Emergency Medical Services ambulance arrived at approximately 8:45 p.m. Mr. Boller was transported to Piedmont Hospital and efforts were made to resuscitate him, but he was pronounced dead approximately nine minutes after he arrived at the hospital.

Laura Boller sued the Arts Center for her husband's wrongful

---

[2] (Punctuation omitted.) *Ethridge v. Davis*, 243 Ga. App. 11, 12 (530 SE2d 477) (2000), citing *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

death. Boller claimed that the Arts Center breached its duty of care to her husband, an invitee, by its failure to have on site either an ambulance or an officer operating an automatic external defibrillator device ("AED") and by its failure to maintain a safety and security plan to govern the actions of employees and security personnel during a medical emergency. She claimed that this failure resulted in a delay in medical treatment for her husband's condition, and she submitted the testimony of a medical expert that if her husband had received medical care in under six minutes, whether from an on-site ambulance or from an officer operating an AED, he would not have died. Boller further claimed that the Arts Center breached its contractual duty as she and her husband were intended third-party beneficiaries of an agreement between Chastain Ventures (of which the Arts Center was a member) and the City of Atlanta, which required that the Venture provide for professional management of the venue.

In granting the Arts Center's motion for summary judgment, the trial court concluded that the Arts Center had no duty to provide an on-site ambulance or AED; that the existence of a crowd, by itself, did not constitute a hazard or dangerous condition; and that the Arts Center did not have superior knowledge of any dangerous condition. The court concluded that the Arts Center acted with reasonable and ordinary care to procure medical care for Mr. Boller almost immediately after he fell and his condition was confirmed by Patterson. The court rejected Boller's argument that the Arts Center voluntarily undertook to provide on-site medical care by reason of the contract calling for a stand-by ambulance, reasoning that imposing liability on this ground would conflict with the "Good Samaritan" statute, OCGA § 51-1-29. The trial court did not address Boller's claim that the Arts Center was liable under a contract of which the Bollers were third-party beneficiaries.

1. Boller contends that the trial court erred in ruling that the Arts Center had no duty to provide an on-site ambulance or AED to her husband and that it acted with reasonable care in obtaining emergency medical assistance when he became ill. We disagree.

"The essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages."[3] Thus, "[t]he threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff."[4] This issue

---

[3] (Citation omitted.) *Seymour Elec. &c. Svc. v. Statom*, 309 Ga. App. 677, 679 (710 SE2d 874) (2011). Accord *McQuaig v. Tarrant*, 269 Ga. App. 236, 237 (603 SE2d 751) (2004).

[4] (Footnote omitted.) *McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 742 (1) (706 SE2d 676) (2011).

is a question of law.[5]

(a) A legal duty sufficient to support liability in negligence is "either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts."[6] Boller has pointed to no statutory enactment, and we have found none, which would impose a duty on the Arts Center to provide emergency medical services to the patrons of its concerts. Nor does any common law principle impose such a duty. On the contrary, the long-established general rule is that "[a] person is under no duty to rescue another from a situation of peril which the former has not caused,"[7] even when the peril is foreseeable.[8] We conclude that this case is controlled by our decision in *Rasnick v. Krishna Hospitality,*[9] where we held that the defendant innkeeper had no legal duty to comply with a wife's requests that it attempt a rescue of its guest, her husband, from his medical peril.[10] In that case, the defendant did not create the decedent's underlying medical condition.[11] Similarly, in the case at bar, Boller does not allege that the Arts Center or the concert it sponsored caused her husband's sudden attack of cardiac arrest.

The trial court correctly ruled that the Arts Center owed no duty to provide emergency medical services to the decedent in this case,[12] and therefore no material question of fact remains for determination by the jury.[13]

(b) Boller objects to the trial court's statement that the Arts Center acted with reasonable and ordinary care to procure medical care for Mr. Boller once his condition became apparent. We note that once the Arts Center staff elected to provide first aid to Mr. Boller, their actions fell under the scope of the "Good Samaritan" statute,

---

[5] *Barrett v. Ga. Dept. of Transp.*, 304 Ga. App. 667, 669 (1) (697 SE2d 217) (2010).

[6] (Citation and punctuation omitted.) *First Fed. Sav. Bank &c. v. Fretthold,* 195 Ga. App. 482, 484 (394 SE2d 128) (1990).

[7] (Citation and punctuation omitted.) *City of Douglasville v. Queen,* 270 Ga. 770, 773 (3) (514 SE2d 195) (1999).

[8] Id.

[9] 302 Ga. App. 260 (690 SE2d 670) (2010).

[10] Id. at 266 (1).

[11] Id. at 263 (1).

[12] See id.

[13] See *Adler's Package Shop v. Parker,* 190 Ga. App. 68, 72 (1) (b) (378 SE2d 323) (1989) (whole court) (proprietor has duty of ordinary care in protecting invitees from foreseeable dangerous conduct of third parties, but no duty to protect invitee from assault arising from assailant's personal malice toward victim). Compare *Alexander v. Harnick,* 142 Ga. App. 816, 817 (3) (237 SE2d 221) (1977) (Court recognized general principle that one is under no duty to rescue another from peril not of one's own causing, but reversed summary judgment for defendant where defendant caused plaintiff's peril by failing to comply with boat safety statute requiring readily accessible life preservers).

which provides:

> Any person ... who in good faith renders emergency care at the scene of an accident or emergency to the victim ... thereof without making any charge therefor shall not be liable for any civil damages as a result of any act *or omission* by such person in rendering emergency care or as a result of any act *or failure to act* to provide *or arrange for* further medical treatment or care for the injured person.[14]

In her brief, Boller has pointed to no evidence that the actions taken by the Arts Center staff in giving first aid were negligent in any way. Instead, Boller merely reiterates her argument that the Arts Center failed to take certain other actions which might have rescued Mr. Boller from the medical emergency he suffered. We rejected this argument in Division 1 (a) above.

2. Boller contends that the trial court erred in failing to rule that the Arts Center had a duty to mitigate the hazard created by its concert, and that the Arts Center had superior knowledge of a dangerous condition. An occupier of land owes its invitees a duty to exercise ordinary care in keeping the premises and approaches safe[15] and also a duty to keep invitees safe from dangerous conditions of which the occupier has superior knowledge.[16] Boller asserts that the concert created a foreseeable hazard to patrons, who might possibly need ambulances; and that access to an off-site ambulance might be delayed due to traffic surrounding the venue. She adduced evidence from Arts Center employees indicating that on-site access to emergency medical services is "prudent" and its lack is a "hazard"; and she points out that the ASO had contracted for ambulances to be on-site for "events." However, none of this evidence is relevant or specific to the night in question. Boller has not adduced any evidence that the traffic on the night in question was hazardous or that the ambulance which answered the 911 call was delayed on that night by the concert crowd or traffic. Further, as we determined in Division 1 (a) above, the Arts Center had no duty as a matter of law to provide an on-site ambulance or AED at the concert.

---

[14] (Emphasis supplied.) OCGA § 51-1-29. See *Reid v. Midwest Transp.*, 270 Ga. App. 557, 561 (2) (607 SE2d 170) (2004) (under OCGA § 51-1-29, defendant truck driver who parked his truck to render aid to accident victims on highway was not liable to plaintiff passengers in vehicle which ran into his truck).

[15] OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe").

[16] *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997).

3. Boller asserts that summary judgment should not have been granted to the Arts Center because the decedent was a third-party beneficiary of the Renewal Agreement, which provided for the lease of the Amphitheatre by the City of Atlanta to Chastain Ventures. Boller relies on the Renewal Agreement's requirement that the Arts Center "manage and operate the [Amphitheatre] in a manner consistent with the management principles of professional entertainment facilities and in accordance with existing City and State of Georgia policies, procedures, laws and ordinances." This enumeration fails.[17]

"In order for a third party to have standing to enforce a contract, it must clearly appear from the contract that it was *intended* for his or her benefit. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient."[18] It is not necessary for the third-party beneficiary to be specifically named in the contract, but "the contracting parties' intention to benefit the third party must be shown on the face of the contract."[19] Thus, in personal injury cases, an injured party may not recover as a third-party beneficiary for the defendant's failure to perform a duty imposed by a contract, "unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him from physical injury."[20] Where a contract is silent as to its intent to confer a benefit upon a plaintiff, the plaintiff may not recover as a third-party beneficiary to the contract.[21]

In the case at bar, Chastain Ventures' lease with the City of Atlanta contains no language reflecting an intent to confer a direct benefit on any patrons or attendees of the concerts held at the Amphitheatre. Consequently, the evidence does not support a finding that the decedent was a third-party beneficiary of Chastain Ventures'

---

[17] This issue was raised below, but the trial court did not address this argument in its ruling. Nonetheless, "[a] grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed." (Punctuation and footnote omitted.) *Barrett*, supra.

[18] (Citation and punctuation omitted; emphasis in original.) *Donnalley v. Sterling*, 274 Ga. App. 683, 685 (1) (618 SE2d 639) (2005). Accord *Brown v. All-Tech Investment Group*, 265 Ga. App. 889, 897 (2) (a) (i) (595 SE2d 517) (2004).

[19] (Citations and punctuation omitted.) *Donnalley*, supra. Accord *Brown*, supra.

[20] *(Citation and punctuation omitted.) Donnalley*, supra. Accord *Brown*, supra.

[21] *Brown*, supra (invitees, injured in criminal attack on building, were not third-party beneficiaries of contract between premises owner and company providing security to premises, even though invitees could expect to be benefitted by performance of security contract); *Donnalley*, supra at 686 (1) (camper injured in swimming accident was not a third-party beneficiary to rental contract which provided that defendant would provide "qualified personnel" to patrol water front areas).

Renewal Agreement with the City of Atlanta.[22]
*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED AUGUST 16, 2011 —
RECONSIDERATION DENIED SEPTEMBER 16, 2011 — 

*Bondurant, Mixson & Elmore, Alison B. Prout, Michael B. Terry,* for appellant.
*Casey Gilson, Robert P. White,* for appellee.