**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL VERDUGO, brother of Decedent; ROSEMARY VERDUGO, mother, successor and heir of Mary Ann Verdugo, Decedent, *Plaintiffs-Appellants*, <br><br> v. <br><br> TARGET CORPORATION, a Minnesota corporation, *Defendant-Appellee*. | No. 10-57008 <br><br> D.C. No. 2:10-cv-06930-ODW-AJW Central District of California, Los Angeles <br><br><br> ORDER |

Filed December 11, 2012

Before: Harry Pregerson, Susan P. Graber, and Marsha S. Berzon, Circuit Judges.

Order;
Concurrence by Judge Graber;
Dissent by Judge Pregerson

## SUMMARY[*]

### Certification to CA Supreme Court

The panel certified a question of California law to the California Supreme Court, withdrew the case from further consideration, and stayed further proceedings pending final action by the California Supreme Court.

The panel certified the following question:

> In what circumstances, if ever, does the common law duty of a commercial property owner to provide emergency first aid to invitees require the availability of an Automatic External Defibrillator ("AED") for cases of sudden cardiac arrest?

Judge Graber concurred fully in the order, and wrote separately to note that in the absence of the California Supreme Court's guidance, she would disagree with Judge Pregerson's dissenting view.

Judge Pregerson dissented from the order certifying a question to the California Supreme Court. Judge Pregerson would reverse the district court's dismissal of the complaint and remand for further proceedings because he would hold in the circumstances of this case that the California common law duty for a business to provide emergency first aid to its

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

invitees requires the availability of an AED for cases of sudden cardiac arrest.

## COUNSEL

Robert A. Roth, Tarkington, O'Neill, Barrack & Chong, Berkeley, California; David G. Eisenstein, Law Offices of David G. Eisenstein, P.C., Carlsbad, California for Plaintiffs-Appellants.

Benjamin R. Trachtman and Ryan M. Craig, Trachtman & Trachtman, Mission Viejo, California for Defendant-Appellee.

## ORDER

Pursuant to Rule 8.548 of the California Rules of Court, we request the California Supreme Court to decide the question of California law set forth in Part II of this order. This case is withdrawn from submission until further order of this court, and all further proceedings in this court are stayed pending final action by the California Supreme Court.

There is no controlling precedent resolving the question we set forth below. The answer will determine the outcome of the present appeal. Our phrasing of the question below is not meant to restrict the California Supreme Court's consideration of the issue involved. We agree to follow the answer provided by the California Supreme Court.

# I

## CAPTION AND COUNSEL

Michael and Rosemary Verdugo are considered the petitioners in this request because they appeal from the district court's adverse ruling on the specified issue. The caption of this case is:

> MICHAEL VERDUGO, brother of Decedent; ROSEMARY VERDUGO, mother, successor and heir of Mary Ann Verdugo, Decedent, Plaintiffs-Appellants,
>
> v.
>
> TARGET CORPORATION, a Minnesota corporation, Defendant-Appellee.

The names and addresses of counsel are:

*For the Verdugos*: Robert A. Roth, Tarkington, O'Neill, Barrack & Chong, Berkeley, CA; David Griffith Eisenstein, Law Offices of David G. Eisenstein, P.C., Carlsbad, CA.

*For Target Corporation*: Benjamin R. Trachtman, Ryan M. Craig, Trachtman & Trachtman, Mission Viejo, CA.

## II

## QUESTION OF LAW

The question of law we wish to be answered is:

In what circumstances, if ever, does the common law duty of a commercial property owner to provide emergency first aid to invitees require the availability of an Automatic External Defibrillator ("AED") for cases of sudden cardiac arrest?

## III

## STATEMENT OF FACTS

Mary Ann Verdugo, age 49, was shopping at a Target store in Pico Rivera, California, with her mother and brother on August 31, 2008, when she suffered sudden cardiac arrest and collapsed. In response to a 911 call, paramedics were dispatched from a Los Angeles County Fire Department station nearby. It took the paramedics several minutes to reach the store, and several more minutes to reach Verdugo inside. By the time the paramedics arrived, Verdugo was dead and could not be resuscitated. Target did not have an AED in its store.

Nearly 300,000 Americans suffer from sudden cardiac arrest every year, and only eight percent survive. Sudden cardiac arrest is caused by a problem with the heart's electrical impulses, causing it to stop pumping blood. Unlike a myocardial infarction (a heart attack), sudden cardiac arrest often strikes with no prior symptoms and can strike a heart

that is otherwise healthy. A shock from an AED can restart a heart by correcting the misfiring of its electrical impulses. To be effective, the AED must be used immediately. The chance of surviving sudden cardiac arrest decreases by 10 percent for every minute that passes before the heart's rhythm is restored. Cardiac Arrest Survival Act of 2000, Pub. L. No. 106–505, § 402(5), 114 Stat. 2314. It is estimated that 30 percent of those who experience cardiac arrest could be saved if an AED were used immediately. *Id.* § 402(4).

Target sells AEDs on its website for approximately $1,200. AEDs can be used by the untrained, as the devices provide oral instructions to users and "are designed not to allow a user to administer a shock until after the device has analyzed a victim's heart rhythm and determined that an electric shock is required." *Id.* § 402(8).

Verdugo's mother and brother filed a wrongful death action against Target in California Superior Court, and Target removed to federal court. Target then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which the district court granted, holding that Target had no duty to acquire and install an AED. The Verdugos appealed, arguing that a duty does exist under California common law and, in the alternative, asking that the question be certified to the California Supreme Court. Target opposed certification.

## IV

## STATEMENT OF REASONS FOR THE REQUEST

The resolution of the question presented by this case implicates strong state interests and could have wide-reaching

effects in the state of California. The Verdugos seek the announcement of a common-law rule that would require many retail establishments across the state to acquire AEDs. Target suggests that such a rule would burden it and many companies like it, that California common law does not support such a rule, and that the California AED statutes preclude the imposition of such a common law rule. More broadly, Target maintains that California common law does not support any requirement that property owners provide first aid to invitees beyond calling 911 to summon assistance. As a matter of comity, we consider the California Supreme Court better positioned to address these major questions of California tort law than this court. *See Klein v. United States*, 537 F.3d 1027, 1030 (9th Cir. 2008) (order).

## A

Both parties agree that there is no statutory duty in California requiring a business like Target to obtain a defibrillator. The California legislature has enacted a series of statutes governing AEDs that are acquired by building owners and managers. *See* Cal. Health & Safety Code § 1797.196 (West 2012); Cal. Civ. Code § 1714.21(d) (West 2012) (providing immunity from civil liability for those who acquire AEDs as long as they comply with specified maintenance, testing, and notice requirements). These statutes "reflect legislative policy to encourage the availability of AEDs by providing immunity from liability for those who acquire the devices." *Rotolo v. San Jose Sports & Entm't, LLC*, 151 Cal. App. 4th 307, 314 (Ct. App. 2007).

At the same time, the legislature has declared that "[n]othing in this section . . . may be construed to require a

building owner or a building manager to acquire and have installed an AED in any building." Cal. Health & Safety Code § 1797.196(f). Whether the AED statutes as a whole, including § 1797.196(f), preclude the existence of a *common law* duty to acquire an AED is one of the issues in this case. *See Rotolo*, 151 Cal. App. 4th at 325.

Target argues, and the district court held, that the statutory scheme has "occupied the field," and that imposing a common law duty here would "defeat the underlying legislative purpose." *Id.* at 314. For this proposition, Target relies largely on *Rotolo*, which held that where a hockey rink *had* acquired an AED but failed to notify invitees of its existence and location, and a hockey player died as a result, the statutory scheme precluded common law liability where there had been compliance with the statutory requirements for immunity. *Id.* at 322–23.

The Verdugos maintain, to the contrary, that the thrust of California's legislative scheme regarding AEDs is to encourage their availability by providing immunity for those who acquire them and comply with training and maintenance requirements. *Id.* at 319–20. According to the Verdugos, the statutes deal with situations in which business owners do acquire AEDs and do not apply to the situation presented here, where a business owner has not acquired an AED. Imposing a common law duty to acquire an AED in these circumstances, the Verdugos maintain, would not frustrate the legislature's desire to promote the acquisition of AEDs by providing a safe harbor from liability for those who install and maintain them properly, as any business required to install an AED under a common law tort theory would be entitled to statutory immunity. On this analysis, the existence

of California's statutory scheme is not determinative as to whether a common law duty exists.

## B

If the court were to accept the Verdugos' view of the relationship between the AED statutes and California common law, then the pertinent question would become whether Target Stores had a duty under California common law to have an AED available. There is under California law a "special relationship" between business owners and their invitees, which creates a duty to provide "'assistance [to] . . . customers who become ill or need medical attention.'" *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 241 (2005) (alteration in original) (quoting *Breaux v. Gino's, Inc.*, 153 Cal. App. 3d 379, 382 (Ct. App. 1984)). Beyond this basic principle, California's invitee precedents are in some tension as they pertain to the issue in this case.

Target suggests, first, that the duty to provide medical assistance to invitees is uniformly discharged simply by calling 911, relying for this proposition on *Breaux*. In *Breaux*, the Court of Appeal held that a restaurant had fulfilled its duty to a choking patron by summoning emergency services and was not required to provide further assistance. 153 Cal. App. 3d at 381–82. The Verdugos point out, however, that *Breaux* relied in its reasoning on a statutory scheme similar to the one implicated in *Rotolo*: California law required the posting in restaurants of first aid instructions for choking victims and created a safe harbor from liability for restaurants that did so. *Id.* at 381 & n.2. Gino's, the defendant in *Breaux*, had posted the instructions required for the safe harbor. Under those circumstances,

imposing a common law duty beyond calling 911 would, as in *Rotolo*, have contradicted the legislative scheme. Here, in contrast, Target did not have an AED available on the premises, and so had not taken the steps necessary under the statute to trigger immunity from liability.

Just as Target relies on *Breaux*, so the Verdugos rely on *Delgado*, maintaining that it refutes any categorical rule that summoning emergency services is always sufficient to fulfill a business's duty of care to its patrons. In *Delgado*, the court held that a bar had a duty to do more than simply call the police when a fight broke out between several of its customers. 36 Cal. 4th at 245–46. In determining the scope of the duty owed to invitees, *Delgado* observed, foreseeability of injury is a "'crucial factor.'" *Id.* at 237 (quoting *Ann M. v. Pac. Plaza Shopping Ctr.*, 6 Cal. 4th 666, 676 (1993)). The foreseeability of the harm must be balanced "against the burden of the duty to be imposed." *Ann M.*, 6 Cal. 4th at 678. Where the burden of preventing the harm is great, a higher degree of foreseeability is required, and where "the harm can be prevented by simple means, a lesser degree of foreseeability may be required." *Id.* at 679 (internal quotation marks omitted). Applying this analysis, the court in *Delgado* reasoned that the bar's bouncers could foresee that a fight was about to erupt and, in that situation, there were "reasonable, relatively simple, and minimally burdensome steps" they could have taken to prevent it. *Delgado*, 36 Cal. 4th at 246. In so holding, the court distinguished *Ann M.*, in which the plaintiff was raped in the shopping center where she worked. *Ann M.*, 6 Cal. 4th at 671. Noting that hiring security guards would be relatively burdensome, the court concluded that the harm that befell the plaintiff was not sufficiently foreseeable to justify imposing this duty. *Id.* at 679–80.

While the court has thus laid out a basic framework for analyzing the scope of the duty to prevent harm to invitees, neither *Delgado* nor *Ann M.* involved the duty to provide first aid to invitees, much less decided the precise issue presented here, the duty to have AEDs available on one's business premises. Nor does applying the general test articulated in *Delgado* provide "clear controlling California precedent." *Klein*, 537 F.3d at 1030 (internal quotation marks omitted).

On one hand, it was not foreseeable to Target that Verdugo herself would suffer cardiac arrest, and so Target was not aware of the specific danger, which the bouncers in *Delgado* were. On the other hand, California courts considering foreseeability as an aspect of duty often focus on whether the *type* of harm suffered was foreseeable, not whether "'a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct.'" *Carrera v. Maurice J. Sopp & Son*, 177 Cal. App. 4th 366, 378 (Cal. Ct. App. 2009) (emphasis in original) (quoting *Ballard v. Uribe*, 41 Cal. 3d 564, 572 n.6 (1986)). In this sense, it could be foreseeable to Target that one of its customers might suffer sudden cardiac arrest while shopping, given the fact that more than 700 people die of sudden cardiac arrest in the United States every day. Cardiac Arrest Survival Act § 402(1). Even so, it is not clear to us under California precedents whether the foreseeability inquiry is to be undertaken on a store-by-store or a company-wide basis, or what degree of likely occurrence of a particular illness is sufficient to make that occurrence foreseeable. Moreover, the parties dispute the degree to which the foreseeability issue should be influenced by the location of this particular Target store—in a shopping center—or by its large size, both factors which increase the likelihood that 911 or other outside AED

assistance will not be able to reach patrons suffering sudden cardiac arrest in time to save them.

The burden side of the analysis is similarly debatable under the existing precedents. Target sells AEDs online for approximately $1,200 each. For a property owner to be eligible for the statutory immunity from liability, an AED, once purchased, must be checked every 30 days, and one employee must be trained in its use. Cal. Health & Safety Code § 1797.196(b)(2). Requiring Target to purchase and maintain an AED for each of its California stores would be economically less burdensome than, for example, requiring it to hire security guards to prevent crime. *See Ann M.*, 6 Cal. 4th at 679; *see also Sharon P. v. Arman*, 21 Cal. 4th 1181, 1190 (1999). On the other hand, requiring such preventive purchases appears more burdensome than requiring already-employed bouncers to intervene to stop a fight once it occurs. *See Delgado*, 36 Cal. 4th at 246–47. Moreover, as with the foreseeability prong, the California precedents do not provide clear guidance as to whether the burden is to be evaluated on a store-by-store or a company-wide basis.

In sum, given the uncertainty in the most applicable California precedents as applied to the present circumstances, weighing the foreseeability of the harm suffered by Verdugo against the burden to be imposed on Target does not provide a clear answer to the question of whether Target had a duty under California law to purchase AEDs.

## C

The court in both *Ann M.* and *Delgado* also mentioned the factors listed in *Rowland v. Christian*, 69 Cal. 2d 108, 112–13 (1968), as being useful "'in determining the existence and scope of a duty [to invitees] in a particular case.'" *Delgado*, 36 Cal. 4th at 237 n.15 (quoting *Ann M.*, 6 Cal. 4th at 675 n.5).[1]  In addition to foreseeability and burden, these factors are:

> [1] the degree of certainty that the plaintiff suffered injury, [2] the closeness of the connection between the defendant's conduct and the injury suffered, [3] the moral blame attached to the defendant's conduct, [4] the policy of preventing future harm, . . . and [5] the availability, cost, and prevalence of insurance for the risk involved.

*Rowland*, 69 Cal. 2d at 113.

Applying these factors also does not provide a clear answer to the question whether Target had a duty to have an AED available on its premises.  Without an AED on-site, it was virtually certain that Verdugo would die.  Defibrillation

---

[1] *Rowland* seems to have originally articulated these factors as helpful in determining whether to make an exception to "the general principle that a person is liable for injuries caused by his failure to exercise reasonable care," and not for the purpose of determining the precise scope of the duty of care that arises from a special relationship. *Rowland*, 69 Cal. 2d at 112. Nevertheless, the California Supreme Court has since considered those factors as "useful" for this purpose. *See Delgado*, 36 Cal. 4th at 237 n.15; *Ann M.*, 6 Cal. 4th at 675 n.5.

is the only definitive treatment for sudden cardiac arrest, and "every minute that passes before returning the heart to a normal rhythm decreases the chance of survival by 10 percent." Cardiac Arrest Survival Act § 402(5). On the other hand, it is far from certain that immediate treatment with an AED will revive a particular patient. While the first two factors thus may support the imposition of a duty, they do so only mildly. The third factor weighs against finding a duty, as Target's failure to provide an AED was not morally blameworthy in the sense that term is used by California courts. *See Rotolo*, 151 Cal. App. 4th at 337–38. The fourth factor strongly supports finding a duty, as doing so would help prevent future harm by increasing the availability of AEDs. The final factor also supports a duty, as California has provided a safe harbor from liability for businesses that acquire AEDs, so no insurance would be required as long as the conditions for invoking the safe harbor were met. Cal. Civ. Code § 1714.21(b).

## D

Pertinent to our request for certification, finally, is that courts in other jurisdictions applying similar balancing or multi-factor approaches to liability have reached divergent conclusions when confronting AED issues similar to the one in this case. Some courts to have considered the matter have held that there is no duty on the part of business owners to provide AEDs to be used on their invitees in the event of cardiac arrest. *See Boller v. Robert W. Woodruff Arts Ctr., Inc.*, 716 S.E.2d 713, 715 (Ga. Ct. App. 2011); *L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 561 (Fla. Dist. Ct. App. 2008); *Salte v. YMCA of Metrop. Chi. Found.*, 814 N.E.2d 610, 615 (Ill. App. Ct. 2004); *Atcovitz v. Gulph Mills Tennis*

*Club, Inc.*, 812 A.2d 1218, 1224 (Pa. 2002); *Rutnik v. Colonie Ctr. Court Club, Inc.*, 672 N.Y.S.2d 451, 453 (N.Y. App. Div. 1998). Other courts, however, have allowed similar AED suits to go to the jury, concluding that the duty question turns on case-specific factual matters. *See Aquila v. Ultimate Fitness*, 52 Conn. L. Rptr. 81 (Conn. Super. Ct. 2011); *Ksypka v. Malden YMCA*, 22 Mass. L. Rptr. 122 (Mass. Super. Ct. 2007); *Fowler v. Bally Total Fitness Corp.*, No. 07 L 12258 (Ill. Cir. Ct. Oct. 27, 2007).

Thus, neither California precedents nor cases from other courts provide us with sufficient guidance to answer the important question of California tort law presented by this case. We therefore respectfully ask the California Supreme Court for guidance and will follow that guidance once received.

## V

Pursuant to California Rule of Court 8.548(d), the Clerk of this court shall forward an original and 10 copies of this order, under official seal, to the California Supreme Court, along with a certificate of service on the parties, and copies of all briefs, excerpts of record, requests for judicial notice, and post-argument letters that have been filed with this court.

The parties shall notify the Clerk of this court within 14 days of any decision by the California Supreme Court to accept or to decline our request. If the California Supreme Court accepts, the parties shall file a joint report six months after the date of acceptance and every six months thereafter advising us of the status of the proceedings. The parties shall

also notify the Clerk of this court within 14 days of the issuance of an opinion by the California Supreme Court.

**IT IS SO ORDERED.**

GRABER, Circuit Judge, concurring:

I concur fully in the Order certifying a question to the California Supreme Court. I write separately only to note that, in the absence of that court's guidance, I would disagree with the dissent's view, as I understand extant California law.

First, the legislature's wide-ranging statute concerning the availability and use of AEDs strongly suggests that the legislature occupied the field and displaced any duty that a business may have under California common law to acquire or install an AED. *See* Cal. Health & Safety Code § 1797.196(f) ("Nothing in this section or Section 1714.21 may be construed to require a building owner or a building manager to acquire and have installed an AED in any building."). Second, I read California law to establish only a limited duty on the part of a business to come to the aid of an invitee who is in physical distress. Third, because the foreseeability of cardiac arrest is universal, the dissent's view contains no limiting principle; all businesses, of any size, can foresee equally that a customer might suffer sudden cardiac arrest. Thus, in essence, finding a common law duty might well eviscerate California Health & Safety Code section 1797.196(f).

In short, because reasonable minds differ about the state law that we must apply, certification is particularly

appropriate here. *See Klein v. United States*, 537 F.3d 1027, 1030 (9th Cir. 2008) (stating that certification is appropriate if "no clear controlling California precedent squarely addresses the question before us" (internal quotation marks omitted)).

---

PREGERSON, Circuit Judge, dissenting:

On August 31, 2008, 49-year-old Mary Ann Verdugo went shopping at a Target store in Pico Rivera, California. While inside the store, Mary Ann suffered sudden cardiac arrest. She died within minutes.

Paramedics were called promptly. But it took several minutes for them to arrive at Target's curbside and several minutes more to reach Mary Ann inside the big box store. The paramedics attempted to revive Mary Ann. But it was too late to save her life.

Nearly 300,000 Americans are victims of sudden cardiac arrest every year. Victims of sudden cardiac arrest collapse and quickly lose consciousness–often without warning. Death follows unless normal heart rhythm is restored within a matter of minutes.

Sudden cardiac arrest is treatable, but more than 95 percent of cardiac arrest victims die, mainly because of the lack of an available external defibrillator ("AED"). Cardiac Arrest Survival Act of 2000, Pub. L. No. 106-505, § 402(3), 114 Stat. 2314 (2000). Although "CPR may help prolong the window of survival," defibrillation "is the only definitive treatment" for sudden cardiac arrest. The American Red

Cross AED Frequently Asked Questions, http://www.redcrosscny.org/pdf/AED_FAQs.pdf.  To be successful, an AED shock generally must be administered within five minutes from the onset of sudden cardiac arrest.

Despite the frequency of sudden cardiac arrest and the absolute necessity of using an AED within the first few minutes, the Pico Rivera Target failed to equip its store with a life-saving defibrillator.  That is why Mary Ann Verdugo's life could not be saved.

A business has a "special relationship" with its invitees.  This special relationship creates an affirmative duty requiring the business to provide first aid to its invitees who become ill or injured on the premises, and "to care for them until they can be cared for by others."  Restatement (Second) of Torts § 314A; *see also Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 241 (2005).

The scope of a business's duty to provide care is "determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed."  *Ann M. v. Pacific Plaza Shopping Ctr.*, 6 Cal. 4th 666, 678 (1993).  "[W]here the burden of preventing future harm is great, a high degree of foreseeability may be required."  *Id.* (citation and quotation marks omitted).  Nevertheless, "in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required."  *Id.* at 678–79 (citation and quotation marks omitted).  "Duty in such circumstances is determined by a balancing of 'foreseeability' . . . against the 'burdensomeness, vagueness, and efficacy' of the proposed

. . . measures." *Id.* at 679 (quoting *Gomez v. Ticor*, 145 Cal. App. 3d 622, 631 (Ct. App. 1983)).

More than 700 people in the United States die of cardiac arrest every day. Cardiac Arrest Survival Act at § 402(1). Because of the significant number of people who suffer sudden cardiac arrest, it is reasonably foreseeable that a customer, while shopping at the Pico Rivera Target, could suffer sudden cardiac arrest. Moreover, if a customer suffers sudden cardiac arrest in the large Pico Rivera Target in an area where paramedics cannot reach her within five minutes, she will likely die unless there is an accessible defibrillator in the store. Seconds count when the life of a cardiac arrest victim is in the balance. "[E]very minute that passes before returning the heart to a normal rhythm decreases the chance of survival by *10 percent*." Cardiac Arrest Survival Act at § 402(5) (emphasis added). But the harm can be easily reduced by quick use of a defibrillator. When "CPR and AEDs are used within three to five minutes from the onset of collapse, the survival rate of a sudden cardiac arrest victim is as high as 50 to 70 percent." *Automatic External Defibrillators: Hearing on S.B. 1436 Before the S. Comm. on Health*, 2011–2012 Reg. Sess. 1–2 (Cal. 2012).

Defibrillators are relatively inexpensive and virtually foolproof. Target sells an AED on its website for $1,199.99. AEDs are "safe and effective, even when used by lay people." Cardiac Arrest Survival Act at § 402(8). AEDs are virtually fail-safe because they do not "allow a user to administer a shock until after the device has analyzed a victim's heart rhythm and determined that an electric shock is required." *Id.*

Purchasing an AED and periodically training an employee on its use is not much of a burden for a large store like the Pico Rivera Target.[1]  Providing an AED is an easy and effective way to remedy a grave and foreseeable harm.  In the analogous context of preventing criminals from harming invitees, the California Supreme Court has recognized that, in certain circumstances, some precautionary measures are onerous.  Some measures found onerous include: employing security guards, *Ann M.*, 6 Cal. 4th at 679; and providing bright lights in parking garages, monitoring security cameras, and requiring existing personnel to make periodic walk-throughs of the property, *Sharon P. v. Arman, Ltd.*, 21 Cal. 4th 1181, 1196 (1999).

But this case is different.  The remedy is not onerous, and a defibrillator "is the only definitive treatment for [sudden cardiac arrest]."  The American Red Cross AED Frequently Asked Questions, http://www.redcrosscny.org/pdf /AED_FAQs.pdf.  Acquiring a relatively inexpensive AED and training one employee to use it is not comparable to hiring a security guard or requiring an employee to walk through a garage.  A security guard is hired for one purpose: to guard a premises.  Moreover, requiring existing personnel to make periodic walk-throughs removes that employee from

---

[1] Moreover, in California, any business that acquires an AED is "not liable for any civil damages resulting from any acts or omissions in the rendering of the emergency care" if the business, among other things, regularly maintains the defibrillator, trains one employee per every AED unit on AED usage, and complies with regulations governing placement of the AED.  Cal. Health & Safety Code § 1797.196(b).  California limits the liability for civil damages of any entity that acquires an AED so long as the entity complies with the non-onerous requirements of Cal. Health & Safety Code § 1797.196(b).

their regular duties for a significant amount of time and training.  A Pico Rivera Target employee trained in proper AED usage, however, is not hired specifically to use the AED device and is not required to periodically abandon his or her normal post; the employee is merely trained on how to use the foolproof defibrillator.  Finally, unlike bright lights, security cameras, and periodic basement walk-throughs, acquiring an AED would be extremely effective in preventing death by sudden cardiac arrest.

Because of the reasonable foreseeability that a Pico Rivera Target customer could suffer sudden cardiac arrest, the insignificant burden of acquiring an AED and training employees on how to use the simple device, and the virtual certainty of death if an AED is not used within minutes of the onset of sudden cardiac arrest, the Pico Rivera Target had a duty to have available an AED in its store.  The majority refers the question to the California Supreme Court. I believe that in the circumstances of this case, the California common law duty for a business to provide emergency first aid to its invitees requires the availability of an AED for cases of sudden cardiac arrest.  Thus, I would reverse the district court's dismissal of the complaint against Target and remand for further proceedings.