A11A1914. CITY OF DOUGLAS v. HUDSON.
(726 SE2d 496)

BLACKWELL, Judge.

After Steven Hudson sustained serious injuries in a criminal assault, he sued the City of Douglas, alleging that it owed a duty to protect him from his assailant but negligently failed to do so. The City moved for summary judgment, disputing that it owed any such duty, but the court below denied that motion. The City now appeals from

the denial of summary judgment,[1] and we reverse.

The standard for summary judgment is settled and familiar. "Summary judgment is warranted when any material fact is undisputed, as shown by the pleadings and record evidence, and this fact entitles the moving party to judgment as a matter of law." *Strength v. Lovett*, 311 Ga. App. 35, 39 (2) (714 SE2d 723) (2011). So, as we have explained before, "to prevail on a motion for summary judgment, the moving party must show that there is no genuine dispute as to a specific material fact and that this specific fact is enough, regardless of any other facts in the case, to entitle the moving party to judgment as a matter of law." Id.

> When a defendant moves for summary judgment as to an element of the case for which the plaintiff . . . will bear the burden of proof at trial . . . the defendant may show that he is entitled to summary judgment either by affirmatively disproving that element of the case or by pointing to an absence of evidence in the record by which the plaintiff might carry the burden to prove that element.

Id. We review the denial of summary judgment de novo, viewing the evidence in the record, as well as all inferences that might reasonably be drawn from that evidence, in the light most favorable to the nonmoving party. *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

So viewed, the record shows that Hudson experienced a disruption of his cable television service in November 2007, and he discovered that someone had tampered with the cable box outside his apartment. He reported the tampering to his cable service provider, and it dispatched repair personnel to restore cable service to Hudson. About a week later, Marcus Zachery — who apparently had tampered with the cable box to steal cable service for himself — approached Hudson, complained that Hudson should not have contacted his cable service provider, and threatened to kill Hudson. Hudson called for police assistance, and several City of Douglas officers responded. Hudson told these officers about the threat and asked them to "make [Zachery] leave me alone." One of the officers spoke with Zachery, but the officer did not arrest him. The same officer subsequently provided a copy of his incident report to Hudson, and the officer suggested that

---

[1] The court below certified the denial of summary judgment for immediate review, and the City timely filed a petition for immediate review, which we granted. This appeal followed. See OCGA § 5-6-34 (b).

Hudson take the report to a magistrate judge and apply for a warrant on Zachery. Two weeks later, Hudson did so, but the judge would not issue a warrant because the incident report was incomplete. Hudson tried several times to contact the officer to ask for a completed report, but he was unable to reach the officer.

Hudson moved out of his apartment for a few months, and during that time, he had no more contact with Zachery. Then, in March 2008, Hudson moved back into his apartment. A few days later, he saw a City of Douglas officer at a local Wal-Mart, and he asked the officer if Zachery was still around. This officer responded: "If I'm not mistaken . . . somebody [went] over there today to have Marcus Zachery removed. . . . You are all right. . . . Don't worry about [it]. . . . You go on back over there." But that evening, Hudson discovered that his cable service again had been disrupted. When he went out to investigate, he learned from a neighbor that Zachery had been tampering with the cable box, and Hudson again called for police assistance. City of Douglas officers responded, Hudson pointed out Zachery to the officers, and the officers told Hudson to return to his apartment with the assurance that they would "go handle this." Hudson did so, and his cable service soon was restored. Hudson heard nothing more from the officers about what, if anything, they had done with Zachery. Two days later, as Hudson walked to his mailbox, he was assaulted by Zachery, sustaining serious injuries as a result.[2]

To prove a claim of negligence, a plaintiff must show that the defendant owed a duty to him, that the defendant breached its duty, and that the plaintiff sustained injuries as a proximate result of the breach of duty. See *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). Consequently, the first questions in any negligence case are whether and to what extent the defendant owed the plaintiff a duty of care, *Boller v. Robert W. Woodruff Arts Center*, 311 Ga. App. 693, 695 (1) (716 SE2d 713) (2011), both of which are questions of law. *Barrett v. Ga. Dept. of Transp.*, 304 Ga. App. 667, 669 (1) (697 SE2d 217) (2010). When a municipality is sued for its negligent failure to provide police protection sufficient to keep the plaintiff safe from criminal violence, the plaintiff cannot rest on a generalized obligation of the municipality to protect the public at large, and he instead must show that the municipality owed a duty to him in particular. *City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861) (1993). See also *Gregory v. Clive*, 282 Ga. 476, 477 (651 SE2d 709) (2007); *Butler v. Carlisle*, 299 Ga. App. 815, 824 (4) (683 SE2d 882) (2009). Such a showing ordinarily requires proof of a "*special relationship* between

---

[2] Zachery later was convicted of aggravated battery.

the individual and the municipality which sets the individual apart from the general public and engenders a *special duty* owed to that individual . . . ." *City of Rome*, 263 Ga. at 28 (1) (emphasis in original). See also *Partain v. Oconee County*, 293 Ga. App. 320, 321 (1) (667 SE2d 132) (2008). In this case, the City contends that Hudson is without evidence sufficient to show the requisite special relationship, and we agree.

A showing of a special relationship requires proof of three things. First, the plaintiff must establish that a municipal officer or employee explicitly assured him that the municipality would act on his behalf. Second, the plaintiff must prove that the municipality had knowledge that its failure to act could expose the plaintiff to harm. And third, the plaintiff must show that he relied justifiably and detrimentally on the assurance that the municipality would act. *City of Rome*, 263 Ga. at 29 (2). See also *Partain*, 293 Ga. App. at 321 (1). In this case, even assuming that the officers who dealt with Hudson knew that their failure to act could expose Hudson to harm,[3] Hudson has failed to come forward with evidence sufficient to prove that he relied justifiably and detrimentally on explicit assurances that the City would act on his behalf.

We begin our analysis with the suggestion of an officer in November 2007 that Hudson take a police incident report to a magistrate and procure a warrant on Zachery. If this suggestion was an assurance at all, it was a conditional assurance that, *if* a warrant was issued for Zachery, *then* the municipality would arrest him on the warrant. Even assuming that such an assurance amounts to an "explicit assurance," Hudson could not possibly have still been relying justifiably and detrimentally upon it at the time he was assaulted by Zachery. To the contrary, the undisputed evidence clearly shows that Hudson tried to obtain a warrant from a magistrate, was unsuccessful because the incident report was incomplete, tried several times to get a completed incident report from the officer, and eventually gave up. By the time of the assault, Hudson had known for months that no warrant would be issued for the incident that was the subject of the incident report, and he could not possibly have been justified then in relying on any assurance given in November 2007.

---

[3] Although Hudson claims Zachery threatened to kill him, neither of the incidents prior to the assault involved physical violence between the two men, and the incidents were approximately four months apart, so it could be questioned whether the officers knew that any inaction actually could cause Hudson harm. It is not unusual for people to make threats during a heated argument, but — more often than not — these threats are never carried out. For purposes of this opinion, however, we are assuming that a material question of fact exists about the knowledge requirement of the special relationship test.

We next consider the assurance given to Hudson in March 2008 in a local Wal-Mart that Zachery had been removed from the vicinity of Hudson's apartment that very day. *City of Rome* speaks only of assurances of things to come — "an explicit assurance by the municipality, through promises or actions, that it *would* act on behalf of the injured party," 263 Ga. at 29 (2) (emphasis supplied) — but the assurance about the removal of Zachery concerns an event that, the officer giving the assurance believed, already had occurred. Whether such an assurance about past occurrences can satisfy the requirement of an "explicit assurance" is uncertain, but we will assume in this case, without deciding, that it can. Nevertheless, although Hudson might have relied justifiably upon this assurance for a short time, he discovered later that day that Zachery had again tampered with his cable box, and when he called for police assistance, he pointed out Zachery to the officers. By then, Hudson quite clearly knew that Zachery had not, in fact, been removed from the area — or that, if he had been, the removal was ineffectual — so he could not have continued to justifiably rely upon that assurance in the following days, including when he was attacked by Zachery a few days later.

Finally, we consider the assurance given by one of the officers who responded in March 2008 when Hudson reported for a second time that someone had tampered with his cable box. This officer told Hudson to return to his apartment and that the officers would "go handle this." Subsequently, the cable box was repaired, and Hudson apparently heard nothing more from the officer. While the statement of this officer undoubtedly is an assurance, it is so vague and uncertain that it does not, we think, amount to the "explicit assurance" that our Supreme Court has said is required in a case like this one. The officer said nothing about what, if anything, he intended to do to "handle this." And by saying that he would "handle this," he presumably meant that he would handle the circumstance that brought the officer to the scene, namely a report of tampering with a cable box. Apparently the officers did "handle" that circumstance, inasmuch as cable service was restored to Hudson soon thereafter and he was not disturbed again. There is no evidence that Hudson reported any violence or threats of violence to the officers in March 2008, and there is, therefore, no reason to construe the assurance as an "explicit assurance" that the officers would do anything at all to keep Hudson safe from physical harm at the hands of Zachery. And in any event, it was not a sufficiently explicit assurance for Hudson to have reasonably relied upon it two days later when he exposed himself to a criminal assault by walking to his mailbox.

Citing footnote 4 of *City of Rome*, Hudson argues that, even absent proof of a special relationship, he should survive summary

judgment on the facts of this case. In footnote 4, our Supreme Court said that,

> [s]ince the situation is not presented by the facts of this case, we do not determine whether a special duty may exist even in the absence of a special relationship where a police officer is present at the scene of a crime, has the knowledge and the resources to act to the benefit of the injured party, yet does not act.

263 Ga. at 29, n. 4. Hudson argues that the officers were present at his apartment, knew of the danger to him, and could have protected him, but failed to do so, which amounts, he says, to a breach of their special duty to protect Hudson. We disagree.

We have previously interpreted the *City of Rome* footnote to mean that

> even in the absence of one or more of the three express requirements for the existence of a special relationship with the injured citizen, a special duty to protect that citizen might be found under some circumstances where a police officer is present at the scene of a crime about to be perpetrated against the citizen (who at that point is *an identifiable victim*) and the officer fails to act to protect the citizen despite his ability to do so. . . . The special duty required to maintain the action cannot be established by the mere fact that someone with whom the official had prior contact subsequently injured the plaintiff or the plaintiff's decedent. In deciding the issue of when, if ever, an official's public duty precipitates into a special one to prevent harm to an individual, the law requires, to maintain the action, a showing of imminent harm to an identifiable victim.

*Landis v. Rockdale County*, 212 Ga. App. 700, 702 (445 SE2d 264) (1994) (citation and punctuation omitted; emphasis in original). Here, it cannot be said that any officer was present at a scene where a crime of violence was about to occur, inasmuch as the assault did not occur until two days after the last police response. It is the assault, not some earlier crime involving mere threats or tampering with a cable box, that led to the injuries for which Hudson has sued, and so it is the scene of *that* crime that matters for the purpose of applying footnote 4.

Even construed most favorably to Hudson, the record shows that Hudson is without evidence sufficient to prove a special relationship

between himself and the City, and footnote 4 of *City of Rome* simply has no application here. For these reasons, the City is entitled to judgment as a matter of law, and the court below erred when it denied the motion for summary judgment. The judgment below is reversed.

*Judgment reversed. Mikell, P. J., and Dillard, J., concur.*

DECIDED MARCH 20, 2012.

*Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, Terry L. Readdick, Steven G. Blackerby*, for appellant.

*Copeland, Haugabrook & Walker, Kimberly L. Copeland, Tyrone N. Haugabrook*, for appellee.